IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
JAN 2 3 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| KENNETH BOYCE, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: CV-01-PT-0095-E |
| UNITED DEFENSE CORPORATION, | ) |
| Defendant. | ) |

ENTERED
JAN 23 2002

## MEMORANDUM OPINION

This cause comes to be heard on defendant United Defense LP's Motion for Summary Judgment filed on November 16, 2001.

### FACTS[1]

Plaintiff Kenneth Boyce, Jr. ("Boyce"), began working at United Defense LP ("United") on June 16, 1997. While employed by United, Boyce worked in various departments and on different shifts. He was initially trained as a press operator and worked in the forge shop. On September 2, 1997, Boyce was moved to the components department on second shift. On April 12, 1999, he was moved to first shift in the same department. Boyce was later moved back to the forge shop on August 23, 1999.

Boyce, a Caucasian, began dating Tamica Barnes ("Barnes"), an African-American, in June of 1998. On September 22, 1999, the couple had their first child and eventually became engaged to be married around the beginning of 2000.

After being employed at United approximately a month, Boyce was confronted by coworker, Ronald Barber ("Barber"). Boyce and Barber worked together for about six weeks in

---

[1] The facts are stated favorably to the plaintiff for the purposes of this motion.

the forge shop. Barber made several racial comments concerning African-Americans. Barber told Boyce that he could not stand "nigger" music; he used to stomp niggers until their eyes popped; United catered to niggers; they needed to put niggers back on a boat and send them back to where they came from; and that he had told a white woman that she was white trash because she was kissing a nigger. Boyce reported to his supervisor, Phinzy Tabb ("Tabb"), that Barber was making racial remarks and that he felt uncomfortable working around him.[2] Boyce was moved out of Barber's department on September 2, 1997.[3]

Beginning about a year after he was transferred to the vehicle components department in September of 1997, Boyce began be called nicknames by three white coworkers.[4] Boyce was called "drive by" and "wannabe" by coworkers Mike Lumpkin ("Lumpkin"), Eddie Boozer ("Boozer"), and an employee named Joe. Lumpkin called Boyce "drive by" and "wannabe" approximately two to three times a month. Joe also called Boyce "wannabe" on several occasions. At a retirement dinner for Joe Perry, Boozer informed other employees that he was going to sit by "wannabe." Boyce informed Boozer to not call him that name again. Despite this request, Boozer continued to call Boyce "wannabe." Boyce did not ask the other two individuals to stop calling him "wannabe." He did not ask any of the individuals to stop calling him "drive by." Boyce worked with these individuals approximately three to four months.

---

[2] Boyce did not tell Tabb the specific remarks made by Barber.

[3] In August of 1997, Boyce was moved to third shift and did not have any significant contact with Barber. After being moved out of Barber's department in September of 1997, Boyce was later returned to forge shop on August 23, 1999. At some point in October of 1999, Barber told Boyce that the reason he had problems with the police was because he drove a Cadillac and that was what drug dealers drove.

[4] During his tenure in the vehicle components department, Boyce was referred to by black coworkers as "pink toe." Apparently, Boyce was not offended by this term because it is not cited as one of the racial slurs that he was subjected to.

2

Boyce's supervisor, Mac McLaughlin ("McLaughlin"), heard these employees call Boyce "drive by", "wannabe", and "pink toe." Supervisor McLaughlin and supervisor Steve Surrett ("Surrett") discussed the comments of "drive by" and "wannabe" in 1998. Neither supervisor reported the comments or the individuals involved to United's human resources department. Surrett also heard Boozer and a group of employees engage in a conversation where the words "wannabe" and "wigger" were directed at Boyce. Surrett inquired of Boozer what the word "wigger" meant. Boozer informed Surrett that it stood for "white N." Surrett did not report this incident to the human resources department or discipline any of the individuals involved.

In August of 1999, during Boyce's tenure in the vehicle components department, he had a discussion regarding interracial relationships with Lumpkin. Lumpkin informed Boyce that he would never allow his son to date a black girl or to have her in his house. He told Boyce that he would kick his son out the house if he dated a black girl. Boyce was offended by this statement because of his relationship with Barnes. Boyce asked Lumpkin whether he rather his son date a black girl or be gay. Lumpkin replied that it did not matter because either way he was going to hell. Boyce asked Lumpkin if believed that one goes to hell for dating someone outside of your race. In reply, Lumpkin stated "you damn right you do." During a later conversation, Lumpkin informed Boyce that the Bible instructed that it was wrong to date outside your own race. Lumpkin did not address Boyce's relationship with Barnes during these conversations. In August of 1999, Boyce informed supervisor McLaughlin of this conversation with Lumpkin.

Also in August of 1999, Boyce went to see his supervisors, Keith Burleson ("Burleson") and Surrett. Burleson, a Caucasian, informed Boyce that he heard that his girlfriend was pregnant. Burleson also stated that he had heard that Boyce's girlfriend was black. Burleson

3

then remarked, "well is she dark black or light black?" After Boyce replied that she is "dark," Burleson stated "well, your baby is going to be high yellow." Burleson's comments were overheard by another supervisor at United. Burleson was reprimanded by United in the form of a three day suspension from work without pay. After this incident, Burleson did not make any further inappropriate comments to Boyce.

Boyce was subjected to additional remarks of a racial nature. Specifically, Boozer commented to Boyce "yeah I seen that sister driving your car around the other day." The "sister" driving Boyce's car was his girlfriend/fiancee, Barnes. In September of 1999, a Caucasian coworker named Joe Turner learned that Boyce went to Anniston High School. After learning this information, Turner stated "oh, you went to school with all them niggers." Next, Turner inquired if Boyce had ever "fucked" a "nigger." Boyce reported this conversation with Turner to supervisor McLaughlin. Another coworker, Terry Deese, asked Boyce in 1999 "why he dated a black girl; what was wrong with a white girl." Additionally, coworker Kenneth Beegle informed Boyce that a female coworker was the perfect woman, "built nice and dumb." Beegle continued to explain that "the only problem with her was that she was black." Boyce never reported the comments made by Deese and Beegle to the management of United.

In August of 1999, Boyce informed supervisor McLaughlin of all the comments made by Barber, Lumpkin, Boozer, and Joe. In September of 1999, supervisor McLaughlin informed Boyce that the racial comments directed at Boyce were "getting out of hand" and that Boyce "needed to do something to put a stop to it." McLaughlin encouraged Boyce to speak with the Human Resource Director, Robert Houston ("Houston"), an African-American. Boyce told McLaughlin that he did not want to make a formal complaint because he was afraid he would lose his job. McLaughlin assured him he would not lose his job. Boyce and McLaughlin went

to talk with Houston on or around September 5, 1999. Boyce informed Houston of the comments made by Burleson and Lumpkin. He also told Houston about the racial nicknames that Boozer, Lumpkin and Joe called him. After this meeting, Houston consulted with the Division Manager, Elmer Doty ("Doty"), Caucasian, regarding the issues raised by Boyce.

On September 28, 1999, Doty held a meeting to address the issues raised by Boyce. Present at the meeting were Boyce, Houston, McLaughlin, Lumpkin, Barber, Turner, and Boozer. Doty began the meeting by stating that he did not know whether Boyce was with his girlfriend because he loved her or because he was trying to change the world. Doty informed Boyce that he should not try to change his coworkers' views regarding interracial relationship while at work. Doty informed these individuals that United would not tolerate their alleged behavior. At some point in the meeting, Boyce's coworkers were asked to sign forms which stated they apologized for their behavior toward Boyce. Barber was angered by this request and initially refused to sign the form. However, all of Boyce's coworkers signed the form. Doty also had a form for Boyce to sign which stated he accepted the apology. Boyce refused to sign the form. He repeatedly informed all present that he would handle the matter his own way. When Doty asked Boyce what he meant, Boyce stared straight ahead, trembled a little, and stated that he would handle the matter in his own way. Houston and Doty discussed Boyce's behavior during the meeting and were concerned that he was hinting at violence. Boyce was then referred to mandatory company-sponsored Employee Assistance Program ("EAP") counseling.

After the referral, Boyce met with United's industrial nurse, Charlotte Wildes Fuqua ("Fuqua"), who explained the requirements of a mandatory referral. Fuqua explained that it was Boyce's responsibility to schedule the appointment. She further informed Boyce that mandatory

5

referral meant that Boyce would be terminated if he did not follow through with the counseling.[5] Boyce contacted Debbie Anderson ("Anderson") at EAP and left a voice mail message. Boyce was not aware of whether Anderson attempted to call him back regarding his message.[6] Boyce did not attend the mandatory counseling sessions. Boyce was terminated by United effective October 21, 1999.

Boyce filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination and retaliation. The EEOC issued a right to sue letter on October 12, 2000. Boyce filed this action on January 8, 2001. Boyce alleges in Count I of the Complaint that he was unlawfully terminated by United on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. Boyce also alleges that he was subjected to a hostile work environment. In Count II, Boyce alleges that he was terminated, in part, because of his relationship with his African-American fiancé, in violation of Title VII of the Civil Rights Act of 1964. In Count III, Boyce alleges that United engaged in a systematic scheme of harassment in retaliation for his complaints of racial discrimination. In Counts IV and V, Boyce alleges that United's racial discrimination and retaliation violates 42 U.S.C. § 1981. By Answer filed February 9, 2001, United denied the allegations raised by Boyce in Counts I -V. On November 16, 2001, United filed a motion for summary judgment as to all claims asserted by Boyce in the complaint.

---

[5] Boyce testified in his deposition that Fuqua informed him that failure to get the EAP treatment would result in termination of his employment.

[6] Boyce's roommante, Kenneth Montgomery, testified in his deposition that the EAP service called Boyce's house and left messages for him.

## ARGUMENTS

United makes four primary arguments in support of its motion for summary judgment. First, United claims that there is no direct evidence of discrimination or retaliation. According to United, direct evidence is "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by nondecisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). United states that Houston, the Human Resources Manager, and Doty, the Division Manager, were the decisionmakers concerning Boyce's treatment. United claims that none of the improper comments alleged by Boyce are connected to these decisionmakers or to their decisions which affected Boyce.

Second, United argues that Boyce has not established an independent claim of race discrimination based on association. It notes that Boyce's race discrimination claim based on association depends entirely on the allegations he asserts as evidence of harassment and retaliation. United claims that no evidence supports Boyce's claim that he was discriminated against based on interracial association. In fact, United asserts that Boyce has no knowledge if, when, or to what extent certain coworkers knew of his relationship with Barnes. *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986).

Third, United argues that Boyce's termination was not based on unlawful discrimination or retaliation, but was for failing to comply with mandatory, formal management referral to company-sponsored EAP counseling.[7] In support of this proposition, United raises several

---

[7] United argues that Boyce has failed to establish a prima facie case of unlawful retaliation under the opposition clause of § 704 by showing that he engaged in activity protected by Title VII, that some adverse action

7

claims. First, United claims that it remedied all of Boyce's formal complaints. Specifically, it notes that Burleson was suspended for three days without pay for his comments.[8] It also asserts that it called a meeting in September of 1999 and informed Boyce's coworkers that such comments and behavior would not be tolerated. Second, it claims that Boyce was terminated for a legitimate, non-discriminatory reason: Boyce failure to attend mandatory EAP counseling. United states that Doty and Houston were concerned by Boyce's failure to sign the apology acceptance form and his statement that he would handle matters his own way. It points out that Boyce was aware that the counseling sessions were mandatory and that it was his responsibility to set up the appointment. Finally, it notes that Boyce understood that he would be terminated if he did not attend this counseling. In light of these facts, United argues that Boyce's termination was for his failure to comply with the mandatory EAP referral. Finally, United claims that there is no evidence that its articulated reason for terminating Boyce is a pretext for unlawful discrimination or retaliation. United states that Boyce simply "feels" that Houston was motivated to refer him to counseling because Houston wanted to "get[] back" at him for refusing to sign the apology acceptance form. United contends that Boyce's feelings are insufficient to constitute substantial evidence creating a question of fact as to United's motivation. *See Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). United claims that the legitimate basis for sending Boyce to counseling is undisputed and that Boyce admits the behavior upon which

---

was taken against him by Defendant, and that a causal connection exists between the protected activity and the adverse action. *See Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997).

[8] United argues that it has established a defense to liability based on Burleson's comments because it promptly investigated and disciplined him for his remarks. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

Houston and Doty based their decision.[9] Thus, United argues that Boyce has failed to establish a prima facie case of unlawful discrimination because Boyce has failed to prove that the reasons stated by United are false or are actually a pretext for discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Fourth, United argues that Boyce was not subject to a racially hostile work environment. Relying on *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20 (1993), United states that the court should consider the frequency of the conduct alleged, the severity of the conduct alleged, whether the conduct is physically threatening or humiliating or merely an offensive utterance and whether the conduct unreasonably interferes with Boyce's work performance in determining whether Boyce's allegations establish a prima facie case of hostile work environment. United argues that the alleged comments were infrequently made over a two year period and were not physically threatening. Furthermore, United states that there is no evidence of any interference with Boyce's work performance. It points out that Boyce simply testified that he was "offended." Thus, United argues that Boyce's allegations do not establish a prima facie case of hostile work environment. *See Smith v. Beverly Health and Rehab. Services, Inc.*, 978 F. Supp. 1116, 1120 (N.D. Ga. 1997).

Addressing the hostile work environment claim, United first discusses the comments made by Barber. United initially notes that the claims are not actionable because they are time-barred. United states that the comments made by Barber occurred in June or July of 1997. It comments that Boyce did not file a charge with the EEOC until March 24, 2000, and did not file this action until January 8, 2001. Thus, it argues that claims related to these comments are

---

[9] United also notes that prior to Boyce's termination, it had terminated another employee for failure to comply with mandatory referral to the EAP.

9

barred as untimely.[10] Next, it argues that Barber's conduct was not severe and pervasive. It simply notes that the comments were made by a coworker over a period of a few weeks. Finally, United claims that it promptly remedied Barber's conduct once it was informed.

Turning to the nicknames used by Boyce's coworkers, United argues that names such as "wannabe" and "drive by" do not constitute an abusive work environment. United claims that the conduct was not severe and pervasive. United states that Boyce only worked around the employees that used these nicknames for only three or four months. United asserts that Boyce concedes that the names were only used occasionally. Finally, United argues that once informed of this practice, it promptly took steps to investigate, to warn Boyce's coworkers about such conduct, and to ensure that it would not recur.[11]

Addressing the statements made by Lumpkin concerning interracial relationships, United argues that Lumpkin's comments based on his religious beliefs do not constitute a hostile environment. United contends that there is no evidence that Lumpkin knew about or was intending to address Boyce's relationship with Barnes. Thus, it claims that Boyce has no evidence to support the prima facie element that his comments were based on race. United also claims that Boyce actively participated in these conversations by posing questions to Lumpkin. In any event, United argues that once it was informed of Lumpkin's comments it investigated the incident. Lumpkin was made to attend the meeting on September 29, 1999, where he was warned to not force his religious beliefs on Boyce.

---

[10] United notes that the claims based on Title VII must be asserted in an administrative charge within 180 days of the event in the underlying charge. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1435 n.13 (11th Cir. 1998). Further, it provides that a complaint based on § 1981 must be filed within two years of the events underlying the claim. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987).

[11] In light of its actions, United claims that it has established a defense to liability based on the alleged comments and names. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 799 (1998).

Finally, United argues that comments made by Deese and Beegle do not constitute actionable claims of hostile work environment. According to United, Boyce admits that he never reported any of these alleged comments to United. Therefore, relying on *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 866-68 (11th Cir. 1997), United claims that these alleged comments are not actionable.

In response, Boyce argues that he was subject to comments by coworkers and supervisors which "prove the existence of fact in issue without interference or presumption," constituting direct evidence of discrimination. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997). Boyce notes that he complained to his supervisors regarding these racial comments. Despite these complaints, Boyce claims that these individuals were never "disciplined" by United.

Concerning the retaliation claim, Boyce notes that supervisor Surrett considered him an "excellent" employee and that he never received any verbal counseling or written, formal discipline. Boyce claims that after he reported the racial comments, he was the only employee "disciplined" by United. Additionally, Boyce contends that retaliation is evident because he was terminated even though he attempted to comply with the requirements of management regarding the counseling.

**SUMMARY JUDGMENT STANDARD**

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

11

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## ANALYSIS

There is no genuine dispute that Boyce was terminated because he refused to sign the apology acceptance form or that he refused the EAP counseling or a combination of both. Assuming, without deciding, that the plaintiff has offered sufficient proof of racial harassment, the defendant reasonably responded to the complaints and took reasonable action to remedy the situation. The plaintiff did not reasonably comply with the employer's approach to remedy the situation. His veiled statements tended to aggravate rather than remedy. The statements could have reasonably been interpreted as being threatening. There is no reasonable inference that any decision maker acted discriminatorily or in retaliation for any protected conduct. There is no reasonable inference that the action taken was based upon anything other than plaintiff's refusal(s) to comply. There is no reasonable inference of pretext. The defendant's motion will be granted.

## CONCLUSIONS OF THE COURT

United's Motion for Summary Judgment filed on November 16, 2001, is hereby **GRANTED**.

This _22_ day of January 2002.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**